UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JESSICA DIDIANA, Independent Administrator of the Estate of KD, a Deceased Minor, | ) ) ) | |
| | ) | No.: |
| Plaintiff | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| THE UNITED STATES OF AMERICA, | ) | |
| VHS WEST SUBURBAN MEDICAL | ) | |
| CENTER, INC., a corporation, and | ) | |
| KIMBERLY SCUDDER, R.N., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## COMPLAINT AT LAW

## COUNT I - WRONGFUL DEATH - USA

Plaintiff, JESSICA DIDIANA, Independent Administrator of the Estate of KD, a Deceased Minor, by her attorneys, CLIFFORD LAW OFFICES, P.C., complaining of the Defendant, THE UNITED STATES OF AMERICA (hereinafter "USA"), states as follows:

1. On or about January 5, 2016, and at all times mentioned herein, PCC COMMUNITY WELLNESS CENTER., (hereinafter "CENTER") was a corporation providing health care services to patients.

2. On or about January 5, 2016, and at all times mentioned herein, KATE HEROLD, CNM (hereinafter "HEROLD"), was a midwife licensed to practice midwifery in the State of Illinois.

3. On or about January 5, 2016, and at all times mentioned herein, HEROLD was a duly

1

authorized agent and employee of CENTER and was acting within the scope of her agency and employment.

4.      On or about January 5, 2016,  and at all times mentioned herein, CENTER was a private entity that received grant money from the U.S. Public Health Services pursuant to 42 USC §233(b).

5.      On or about January 5, 2016,  and at all times mentioned herein, pursuant to 42 USC §233, CENTER and HEROLD, and each of them, were acting within the scope of their employment with a private entity that received grant money from the U.S. Public Health Services pursuant to 42 USC §233(b).

6.      On January 5, 2016, Plaintiff, JESSICA DIDIANA, presented Defendant, VHS WEST SUBURBAN MEDICAL CENTER, INC., with a condition commonly known as pregnancy for an induction of labor.

7.      On January 6, 2016, Plaintiff, JESSICA DIDIANA,  came under the treatment of HEROLD, as well as under the treatment of various other actual and/or apparent agents and employees of the Defendant, VHS WEST SUBURBAN MEDICAL CENTER, INC., during the induction of labor.

8.      On January 7, 2016, Plaintiff's Decedent, KD, was delivered by Carl Johnson, M.D. with a Kiwi Vacuum extractor, with the active aid and assistance of HEROLD, and various other actual and/or apparent agents and employees of the Defendant, VHS WEST SUBURBAN MEDICAL CENTER, INC.

9.      On or about January 6, 2016, and at all times mentioned herein, HEROLD had the duty to possess and apply the knowledge and use the skill and care ordinarily used by a reasonably

2

careful midwife in the same or similar circumstances.

10.     On or about January 6, 2016, and at all times mentioned herein, CENTER, by its duly authorized agents and employees, had the duty to possess and apply the knowledge and use the skill and care ordinarily used by careful health care providers in the same or similar circumstances.

11.     On January 6, 2016, and thereafter, Defendant, USA, through its duly authorized agents and employees, HEROLD and CENTER, and each of them, was negligent in the following respects:

a.     Failing to collaborate with an obstetrician about the plan of care on a patient with oligiohydramnios;

b.     Failing to accurately interpret the fetal monitor strips;

c.     Failing to initiate intrauterine resuscitation measures for a non-reassuring fetal heart rate pattern, including turning off Pitocin;

d.     Failing to zero the IUPC to accurately monitor uterine resting tone between contractions on a patient receiving Pitocin;

e.     Failing to apply a fetal scalp electrode after the rupture of membranes with a non-reassuring fetal monitor strip;

f.     Failing to consult with the obstetrician at approximately 11:45 p.m. on January 6, 2016, based on the non-reassuring fetal heart rate pattern;  and

g.     Failing to timely request that a C-section or operative vaginal delivery be performed by the obstetrician at approximately 11:45 p.m.

12.     As a direct and proximate result of the aforesaid negligent acts or omissions of the Defendant, Plaintiff's Decedent, KD, sustained injuries of a personal and pecuniary nature which resulted in her death on February 6, 2016.

13.     Plaintiff, JESSICA DIDIANA, is the duly appointed Independent Administrator of the Estate of KD, Deceased, and brings this action pursuant to the Wrongful Death Act of the State

3

of Illinois, 740 ILCS 180/1 et. seq.

14.     Plaintiff's Decedent, KD, left surviving her father, Pasquale DiDiana, her mother, Plaintiff, JESSICA DIDIANA, her minor sister, SD, and her minor brother, JD, all of whom have sustained pecuniary loss as a result of the death of KD, including, but not limited to, loss of society, guidance, love, affection and companionship.

15.     Attached to this Complaint at Law are the reviewing physician reports and attorney affidavit as required under state law by 735 ILCS 5/2-622 of the Illinois Code of Civil Procedure.

16.     On June 15, 2016, Plaintiff, JESSICA DIDIANA,  filed administrative tort claims with the Standard Form 95 on behalf of KD.

17.     The United States Department of Health and Human Services has not denied the Plaintiff's claims within six months of June 15, 2016, thus entitling the Plaintiff to file suit against the USA in District Court. 28 U.S.C. § 2401 (b).

WHEREFORE, Plaintiff, JESSICA DIDIANA, Independent of Administrator of the Estate of KD, a Deceased Minor, demands judgment against the Defendant, THE UNITED STATES OF AMERICA, in an amount in excess of ONE HUNDRED THOUSAND DOLLARS ($100,000.00).

### COUNT II - SURVIVAL - USA

Plaintiff, JESSICA DIDIANA, Independent Administrator of the Estate of KD, a Deceased Minor, by her attorneys, CLIFFORD LAW OFFICES, P.C., complaining of the Defendant, THE UNITED STATES OF AMERICA (hereinafter "USA"), states as follows:

1.     On or about January 5, 2016, and at all times mentioned herein, PCC COMMUNITY WELLNESS CENTER., (hereinafter "CENTER") was a corporation providing health care services to patients.

4

2.      On or about January 5, 2016, and at all times mentioned herein, KATE HEROLD, CNM (hereinafter "HEROLD"), was a midwife licensed to practice midwifery in the State of Illinois.

3.      On or about January 5, 2016, and at all times mentioned herein, HEROLD was a duly authorized agent and employee of CENTER and was acting within the scope of her agency and employment.

4.      On or about January 5, 2016, and at all times mentioned herein, CENTER was a private entity that received grant money from the U.S. Public Health Services pursuant to 42 USC §233(b).

5.      On or about January 5, 2016, and at all times mentioned herein, pursuant to 42 USC §233, CENTER and HEROLD, and each of them, were acting within the scope of their employment with a private entity that received grant money from the U.S. Public Health Services pursuant to 42 USC §233(b).

6.      On January 5, 2016, Plaintiff, JESSICA DIDIANA, presented Defendant, VHS WEST SUBURBAN MEDICAL CENTER, INC., with a condition commonly known as pregnancy for an induction of labor.

7.      On January 6, 2016, Plaintiff, JESSICA DIDIANA, came under the treatment of HEROLD, as well as under the treatment of various other actual and/or apparent agents and employees of the Defendant, VHS WEST SUBURBAN MEDICAL CENTER, INC., during the induction of labor.

8.      On January 7, 2016, Plaintiff's Decedent, KD, was delivered by Carl Johnson, M.D. with a Kiwi Vacuum extractor, with the active aid and assistance of HEROLD, and various other

actual and/or apparent agents and employees of the Defendant, VHS WEST SUBURBAN MEDICAL CENTER, INC.

9.  On or about January 6, 2016, and at all times mentioned herein, HEROLD had the duty to possess and apply the knowledge and use the skill and care ordinarily used by a reasonably careful midwife in the same or similar circumstances.

10.  On or about January 6, 2016, and at all times mentioned herein, CENTER, by its duly authorized agents and employees, had the duty to possess and apply the knowledge and use the skill and care ordinarily used by careful health care providers in the same or similar circumstances.

11.  On January 6, 2016, and thereafter, Defendant, USA, through its duly authorized agents and employees, HEROLD and CENTER, and each of them, was negligent in the following respects:

a.  Failing to collaborate with an obstetrician about the plan of care on a patient with oligiohydramnios;

b.  Failing to accurately interpret the fetal monitor strips;

c.  Failing to initiate intrauterine resuscitation measures for a non-reassuring fetal heart rate pattern, including turning off Pitocin;

d.  Failing to zero the IUPC to accurately monitor uterine resting tone between contractions on a patient receiving Pitocin;

e.  Failing to apply a fetal scalp electrode after the rupture of membranes with a non-reassuring fetal monitor strip;

f.  Failing to consult with the obstetrician at approximately 11:45 p.m. on January 6, 2016, based on the non-reassuring fetal heart rate pattern;  and

g.  Failing to timely request that a C-section or operative vaginal delivery be performed by the obstetrician at approximately 11:45 p.m.

6

12.     As a direct and proximate result of the aforesaid negligent acts and/or omissions of the Defendant, Plaintiff's Decedent, KD, sustained injuries of a personal and pecuniary nature, including conscious pain and suffering prior to her death on February 6, 2016. Had KD survived, she would have been entitled to bring an action for her injuries and this action survives her death.

13.     Plaintiff, JESSICA DIDIANA, is the duly appointed Independent Administrator of the Estate of KD, Deceased, and brings this action pursuant to the Illinois Survival Act, 755 ILCS 5/27-6.

14.     Attached to this Complaint at Law are the reviewing physician reports and attorney affidavit as required under state law by 735 ILCS 5/2-622 of the Illinois Code of Civil Procedure.

15.     On June 15, 2016, Plaintiff, JESSICA DIDIANA,  filed administrative tort claims with the Standard Form 95 on behalf of KD.

16.     The United States Department of Health and Human Services has not denied the Plaintiff's claims within six months of June 15, 2016, thus entitling the Plaintiff to file suit against the USA in District Court. 28 U.S.C. § 2401 (b).

WHEREFORE, Plaintiff, JESSICA DIDIANA, Independent of Administrator of the Estate of KD, a Deceased Minor, demands judgment against the Defendant, THE UNITED STATES OF AMERICA, in an amount in excess of ONE HUNDRED THOUSAND DOLLARS ($100,000.00).

### COUNT III - WRONGFUL DEATH - WEST SUBURBAN & SCUDDER

Plaintiff, JESSICA DIDIANA, Independent Administrator of the Estate of KD, a Deceased Minor, by her attorneys, CLIFFORD LAW OFFICES, P.C., complaining of the Defendants, VHS WEST SUBURBAN MEDICAL CENTER, INC. (hereinafter "WEST SUBURBAN") and KIMBERLY SCUDDER, R.N. (hereafter "SCUDDER"), and each of them, states as follows:

7

1.     On or about January 5, 2016, and at all times mentioned herein, Defendant, WEST SUBURBAN, was a duly licensed hospital providing healthcare services to patients admitted therein.

2.     On or about January 5, 2016, and at all times mentioned herein, Defendant, SCUDDER, was a nurse duly licensed to practice nursing in the State of Illinois and was engaged in the practice of nursing.

3.     On or about January 5, 2016, and at all times mentioned herein, Defendant, SCUDDER, was a duly authorized actual employee of Defendant, WEST SUBURBAN, and was acting within the scope of her employment.

4.     On or about January 5, 2016, and at all times mentioned herein, Defendant, SCUDDER, was a duly authorized apparent agent of Defendant, WEST SUBURBAN, and was acting within the scope of her apparent agency.

5.     On January 5, 2016, Plaintiff, JESSICA DIDIANA, presented Defendant, WEST SUBURBAN, with a condition commonly known as pregnancy for an induction of labor.

6.     On January 6, 2016, Plaintiff, JESSICA DIDIANA, came under the treatment of Defendant, SCUDDER, as well as under the treatment of various other actual and/or apparent agents and employees of the Defendant, WEST SUBURBAN, during the induction of labor.

7.     On January 7, 2016, Plaintiff's Decedent, KD, was delivered by Carl Johnson, M.D. with a Kiwi Vacuum extractor, with the active aid and assistance of Defendant, SCUDDER, and various other actual and/or apparent agents and employees of the Defendant, WEST SUBURBAN.

8.     On January 6, 2016, and at all times mentioned herein, Defendant, SCUDDER, had the duty to possess and apply the knowledge and use the skill and care ordinarily used by a

8

reasonably careful nurse in the same or similar circumstances.

9.     On January 6, 2016, and at all times mentioned herein, WEST SUBURBAN, by its duly authorized actual and/or apparent agents and employees, had the duty to possess and apply the knowledge and use the skill and care ordinarily used by reasonably careful health care institutions in the same or similar circumstances.

10.     On January 6, 2016, and thereafter, Defendant, SCUDDER, and Defendant, WEST SUBURBAN, through its duly authorized actual and/or apparent agent and employee, SCUDDER, and each of them, were negligent in the following respects:

   a.     Failing to accurately interpret the fetal monitor strips;

   b.     Failing to initiate intrauterine resuscitation measures for a non-reassuring fetal heart rate pattern, including turning off Pitocin;

   c.     Failing to zero the IUPC to accurately monitor uterine resting tone between contractions on a patient receiving Pitocin;

   d.     Failing to apply a fetal scalp electrode after the rupture of membranes with a non-assuring fetal monitor strip;

   e.     Failing to request an obstetrician come to the bedside, through the chain of command if necessary, at approximately 11:45 p.m. on January 6, 2016, based on the non-reassuring fetal heart rate pattern;  and

   f.     Failing to advocate, through the chain of command if necessary, that a C-section or operative vaginal delivery be performed by the obstetrician at approximately 11:45 p.m.

11.     As a direct and proximate result of the aforesaid negligent acts or omissions of the Defendants, Plaintiff's Decedent, KD, sustained injuries of a personal and pecuniary nature which resulted in her death on February 6, 2016.

12.     Plaintiff, JESSICA DIDIANA, is the duly appointed Independent Administrator of

9

the Estate of KD, Deceased, and brings this action pursuant to the Wrongful Death Act of the State of Illinois, 740 ILCS 180/1 et. seq.

13.    Plaintiff's Decedent, KD, left surviving her father, Pasquale DiDiana, her mother, Plaintiff, JESSICA DIDIANA, her minor sister, SD, and her minor brother, JD, all of whom have sustained pecuniary loss as a result of the death of KD, including, but not limited to, loss of society, guidance, love, affection and companionship.

14.    Attached to this Complaint at Law are the reviewing physician reports and attorney affidavit as required under state law by 735 ILCS 5/2-622 of the Illinois Code of Civil Procedure.

WHEREFORE, Plaintiff, JESSICA DIDIANA, Independent of Administrator of the Estate of KD, a Deceased Minor, demands judgment against the Defendants, VHS WEST SUBURBAN MEDICAL CENTER, INC. and KIMBERLY SCUDDER, R.N., and each of them, in an amount in excess of ONE HUNDRED THOUSAND DOLLARS ($100,000.00).

## COUNT IV - SURVIVAL - WEST SUBURBAN & SCUDDER

Plaintiff, JESSICA DIDIANA, Independent Administrator of the Estate of KD, a Deceased Minor, by her attorneys, CLIFFORD LAW OFFICES, P.C., complaining of the Defendants, VHS WEST SUBURBAN MEDICAL CENTER, INC. (hereinafter "WEST SUBURBAN") and KIMBERLY SCUDDER, R.N. (hereafter "SCUDDER"), and each of them, states as follows:

1.    On or about January 5, 2016, and at all times mentioned herein, Defendant, WEST SUBURBAN, was a duly licensed hospital providing healthcare services to patients admitted therein.

2.    On or about January 5, 2016, and at all times mentioned herein, Defendant, SCUDDER, was a nurse duly licensed to practice nursing in the State of Illinois and was engaged in the practice of nursing.

3.      On or about January 5, 2016, and at all times mentioned herein, Defendant, SCUDDER, was a duly authorized actual employee of Defendant, WEST SUBURBAN, and was acting within the scope of her employment.

4.      On or about January 5, 2016, and at all times mentioned herein, Defendant, SCUDDER, was a duly authorized apparent agent of Defendant, WEST SUBURBAN, and was acting within the scope of her apparent agency.

5.On January 5, 2016, Plaintiff, JESSICA DIDIANA, presented Defendant, WEST SUBURBAN, with a condition commonly known as pregnancy for an induction of labor.

6.      On January 6, 2016, Plaintiff, JESSICA DIDIANA, came under the treatment of Defendant, SCUDDER, as well as under the treatment of various other actual and/or apparent agents and employees of the Defendant, WEST SUBURBAN, during the induction of labor.

7.      On January 7, 2016, Plaintiff's Decedent, KD, was delivered by Carl Johnson, M.D. with a Kiwi Vacuum extractor, with the active aid and assistance of Defendant, SCUDDER, and various other actual and/or apparent agents and employees of the Defendant, WEST SUBURBAN.

8.      On January 6, 2016, and at all times mentioned herein, Defendant, SCUDDER, had the duty to possess and apply the knowledge and use the skill and care ordinarily used by a reasonably careful nurse in the same or similar circumstances.

9.      On January 6, 2016, and at all times mentioned herein, WEST SUBURBAN, by its duly authorized actual and/or apparent agents and employees, had the duty to possess and apply the knowledge and use the skill and care ordinarily used by reasonably careful health care institutions in the same or similar circumstances.

10.      On January 6, 2016, and thereafter, Defendant, SCUDDER, and Defendant, WEST

SUBURBAN, through its duly authorized actual and/or apparent agent and employee, SCUDDER, and each of them, were negligent in the following respects:

a.   Failing to accurately interpret the fetal monitor strips;

b.   Failing to initiate intrauterine resuscitation measures for a non-reassuring fetal heart rate pattern, including turning off Pitocin;

c.   Failing to zero the IUPC to accurately monitor uterine resting tone between contractions on a patient receiving Pitocin;

d.   Failing to apply a fetal scalp electrode after the rupture of membranes with a non-assuring fetal monitor strip;

e.   Failing to request an obstetrician come to the bedside, through the chain of command if necessary, at approximately 11:45 p.m. on January 6, 2016, based on the non-reassuring fetal heart rate pattern; and

f.   Failing to advocate, through the chain of command if necessary, that a C-section or operative vaginal delivery be performed by the obstetrician at approximately 11:45 p.m.

11.   As a direct and proximate result of the aforesaid negligent acts and/or omissions of the Defendant, Plaintiff's Decedent, KD, sustained injuries of a personal and pecuniary nature, including conscious pain and suffering prior to her death on February 6, 2016. Had KD survived, she would have been entitled to bring an action for her injuries and this action survives her death.

12.   Plaintiff, JESSICA DIDIANA, is the duly appointed Independent Administrator of the Estate of KD, Deceased, and brings this action pursuant to the Illinois Survival Act, 755 ILCS 5/27-6.

13.   Attached to this Complaint at Law are the reviewing physician reports and attorney affidavit as required under state law by 735 ILCS 5/2-622 of the Illinois Code of Civil Procedure.

WHEREFORE, Plaintiff, JESSICA DIDIANA, Independent of Administrator of the Estate

of KD, a Deceased Minor, demands judgment against the Defendants, VHS WEST SUBURBAN

MEDICAL CENTER, INC. and KIMBERLY SCUDDER, R.N., and each of them, in an amount in

excess of ONE HUNDRED THOUSAND DOLLARS ($100,000.00).


By:    s/Susan A. Capra
        SUSAN A. CAPRA #6203941
        120 N. LaSalle Street, Suite 3100
        Chicago, IL 60602
        (312) 899.9090
        SAC@cliffordlaw.com

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JESSICA DIDIANA, Independent Administrator of the Estate of KD, a Deceased Minor, | ) ) ) | No.: |
| Plaintiff | ) ) | |
| v. | ) ) | |
| THE UNITED STATES OF AMERICA, VHS WEST SUBURBAN MEDICAL CENTER, INC., a corporation, and KIMBERLY SCUDDER, R.N., | ) ) ) ) ) | |
| Defendants. | ) ) ) | |

## PLAINTIFF'S ATTORNEY AFFIDAVIT PURSUANT TO 735 ILCS 5/2-622(a)(1)

SUSAN A. CAPRA states as follows:

1.     I am one of the attorneys with responsibility for this matter on behalf of the Plaintiff.

2.     I have consulted and reviewed the facts of this case with a health professional whom I reasonably believe: (i) is knowledgeable in the relevant issues involved in this particular action; (ii) practices or has practiced within the last six (6) years or teaches or has taught within the last six (6) years in the same area of health care or medicine that is at issue in this particular action; and (iii) is qualified by experience or demonstrated competence in the subject of this case.

3.     The reviewing health professional has determined in a written report after review of the medical records and other relevant material involved in this particular action that there is a reasonable and meritorious cause for the filing of this action against THE UNITED STATES OF AMERICA, VHS WEST SUBURBAN MEDICAL CENTER, INC., a corporation, and KIMBERLY

1

SCUDDER, R.N.

4.     I have concluded on the basis of the reviewing health professional's review and consultation that there is a reasonable and meritorious cause for filing of this action against INGALLS HEALTH SYSTEM, a corporation, THE UNITED STATES OF AMERICA, VHS WEST SUBURBAN MEDICAL CENTER, INC., a corporation, and KIMBERLY SCUDDER, R.N.

5.     A copy of the written report is attached.

FURTHER AFFIANT SAYETH NOT.

_____
Attorney for Plaintiff

[X]     Under penalties as provided by law pursuant to 735 ILCS 5/1-109 of the Code of Civil Procedure, I certify that the statements set forth in this instrument are true and correct, except as to matters therein stated to be on information and belief and as to such matters the undersigned certifies as aforesaid that I verily believe the same to be true.


Susan A. Capra
CLIFFORD LAW OFFICES, P.C.
120 North LaSalle Street
Suite 3100
Chicago, Illinois 60602
(312) 899-9090
ARDC No. 6203941

2

December 29, 2016

Ms. Susan Capra
Clifford Law Offices, P.C.
120 North LaSalle Street
Suite 3100
Chicago, Illinois 60602

    Re: DiDiana v. Scudder, et. al.
    File No. 16N-0017

Dear Ms. Capra:

  I am a physician duly licensed to practice medicine in all of its branches, specializing in and board certified in obstetrics and gynecology. I am knowledgeable in the relevant issues involved in this particular matter. I have practiced within the last six years in the same area of medicine that is at issue in this case and I am qualified by experience and demonstrated competence in the subject matter of this case.

  I have reviewed the medical records pertaining to Jessica DiDiana, from PCC Melrose Park Family Health Center and West Suburban Medical Center, including fetal monitor strips. I express the opinions stated herein to a reasonable degree of medical certainty based upon my training, education, and experience and my review of the aforesaid materials.

  On July 16, 2015, Jessica DiDiana presented to PCC Melrose Park Family Health Center for confirmation of pregnancy. Mrs. DiDiana was a 27 year old G3P2. She was seen by Maureen Ruder, M.D. Her pregnancy test was positive. She was prescribed prenatal vitamins. Various prenatal lab work was ordered as well as an ultrasound. Her EDC based on the last menstrual period was calculated as January 20, 2016. Mrs. DiDiana was instructed to return for a first prenatal visit in four weeks.

  On July 22, 2015, Mrs. DiDiana had an ultrasound performed which confirmed her pregnancy. Her baby was approximately 15 weeks and 2 days by ultrasound with an ultrasound EDC of January 11, 2016.

  Mrs. DiDiana had regular prenatal care. Her prenatal course was unremarkable. Mrs. DiDiana had ultrasounds on August 24, 2015, October 26, 2015 and November 20, 2015 which were reported as normal.

  On January 4, 2016, Mrs. DiDiana had a prenatal visit. She was at approximately 39 weeks gestation. Her blood pressure was initially recorded as 145/96. When her blood pressure was repeated with a manual cuff, it was 128/82. Labs were ordered. She was scheduled for an ultrasound the next day.

1

Mrs. DiDiana had an ultrasound on January 5, 2016 at West Suburban Medical Center. She was noted to have a low amniotic fluid index. Also, urine testing from the January 4, 2016 prenatal visit revealed an elevated protein/creatinine ratio. She was sent to the labor and delivery unit at approximately 1:15 p.m. Mrs. DiDiana's blood pressure was within normal limits. A vaginal exam by Kelly Ellis, CNM revealed that she was .5 cm dilated, 50% effaced with the baby at the -3 station. Mrs. DiDiana left West Suburban Medical Center at approximately 2:45 PM to arrange for child care. She returned to the labor and delivery unit at 7:00 p.m. The plan was for induction of labor for proteinuria and oligohydramnios.

At approximately 22:35 p.m., Mrs. DiDiana was evaluated by Midwife Ellis. Her cervical exam remained unchanged. Midwife Ellis placed Cervadil due to an unfavorable cervix for induction. Mrs. DiDiana was to have continuous fetal monitoring. Her contractions were mild and irregular. The fetal heart rate was 130 with moderate variability and accelerations. There were no decelerations.

On January 6, 2016 at approximately 3:45 a.m., Mrs. DiDiana was again evaluated by Midwife Ellis after being called to the room by the nursing staff for frequent uterine contractions. Mrs. DiDiana was sleepy after the administration of Stadol for pain but still had strong uterine contractions. Her cervical exam was 3 cm/60% /-1. Midwife Ellis removed the Cervadil due to tachysystole. The plan was to continue the induction of labor with the initiation of Pitocin after one hour, if the uterine contractions were greater than four to five minutes apart.

At 9:18 a.m., Mrs. DiDiana was evaluated by Kate Herold, CNM. She was uncomfortable with uterine contractions. Her cervical dilatation remained the same. Midwife Herold noted that the fetal monitor reflected a Category I tracing. Midwife Herold ordered an epidural with Pitocin to start thereafter.

Mrs. DiDiana's epidural was started at approximately 9:30 a.m. At 10:12 a.m., Pitocin was initiated. At 11:18 a.m., a Foley catheter was inserted. At 2:35 p.m., Midwife Herold returned to Mrs. DiDiana's bedside and found her to be resting comfortably. She documented the fetal heart rate tracing had a baseline of 140 beats per minute and moderate variability with accelerations and no decelerations. Contractions were every 2 ½ to 3 ½ minutes. The Pitocin was at 8 milliunits per minute.

At 6:30 p.m., Mrs. DiDiana had a spontaneous rupture of membranes. The amniotic fluid was clear. Midwife Herold performed a cervical exam which was 6 cm/ 70%/-2. Midwife Herold documented that Mrs. DiDiana was in active labor with a Category I fetal heart rate tracing. Midwife Herold placed an intrauterine pressure catheter.

Midwife Herold performed another cervical exam at 9:15 p.m. Mrs. DiDiana's cervix had dilated to 8.5 cm. She was 90% effaced with the fetal head at the zero station. Midwife Herold documented that there was lots of show. Mrs. DiDiana was feeling pressure with contractions and was uncomfortable. The fetal heart rate tracing showed moderate variability with no accelerations

2

and early and some variable decelerations. Midwife Herold now deemed the fetal heart rate tracing to be a Category II strip. The plan was to continue the Pitocin induction, which was then at 10 milliunits.

On January 7, 2016 at 12:15 a.m., Midwife Herold performed a vaginal exam. Mrs. DiDiana's cervix was anterior lip. Mrs. DiDiana began pushing. At 12:30 a.m., Kimberly Scudder, R.N. noted late decelerations on the fetal monitor strips. Oxygen was applied at 12:44 a.m. Mrs. DiDiana continued to push. The fetal monitor and IUPC were not registering and were adjusted by Nurse Scudder.

At 1:00 a.m., both Nurse Scudder and Midwife Herold were noted at the bedside. Fetal heart rate decelerations continued as Mrs. DiDiana continued to push. At 1:21 a.m., Carl Johnson, M.D. was paged for either a vacuum or C-section delivery. Neonatology was also paged.

Dr. Johnson arrived at Mrs. DiDiana's bedside at 1:26 a.m. He delivered at 1:28 a.m. with a Kiwi Vacuum extractor with one pull. He encountered a shoulder dystocia upon delivery of the head which was reduced in under two minutes. Dr. Johnson noted that was not vigorous at birth and was handed off to neonatology. Dr. Johnson noted deep variable decelerations on the fetal monitor strips before delivery. He also noted there was no internal scalp electrode.

was resuscitated in the delivery room by Marietta Luayon, M.D. At birth, was blue and limp with no cry, respirations or heart rate. She was suctioned, bagged and intubated. Dr. Luayon recorded         's Apgar scores as 0, 2 and 2 at one, five and ten minutes respectively. Her cord blood gases were: Venous - pH 7.09 and Arterial - pH 6.73. She was administered multiple doses of epinephrine. Chest compressions were done.         was transferred to the nursery and placed on a ventilator. Dr. Luayon's diagnosis was severe hypoxic/ischemic encephalopathy. Arrangements were made to transfer         to Lurie Children's Hospital where she remained until her death on February 6, 2016.

Based upon my review of the aforementioned materials and my training, education, and experience, I have determined that there is a reasonable and meritorious cause for the filing of an action against Kimberly Scudder, R.N. My opinions, based upon a reasonable degree of medical certainty, are that certain acts and omissions of Kimberly Scudder, R.N. breached the standard of care.

On January 6, 2016 and January 7, 2016, Kimberly Scudder, R.N., and Defendant, West Suburban Medical Center, by their actual and/or apparent agent and employee, Kimberly Scudder, R.N., deviated from the standard of care by:

    a.    Failing to accurately interpret the fetal monitor strips;

    b.    Failing to initiate intrauterine resuscitation measures for a non-reassuring fetal heart

3

rate pattern, including turning off Pitocin;

c. Failing to zero the IUPC to accurately monitor uterine resting tone between contractions on a patient receiving Pitocin;

d. Failing to apply a fetal scalp electrode after the rupture of membranes with a non-assuring fetal monitor strip;

e. Failing to request an obstetrician come to the bedside, through the chain of command if necessary, at approximately 11:45 p.m. on January 6, 2016, based on the non-reassuring fetal heart rate pattern; and

f. Failing to advocate, through the chain of command if necessary, that a C-section or operative vaginal delivery be performed by the obstetrician at approximately 11:45 p.m.

The aforesaid professionally negligent acts and/or omissions of Kimberly Scudder, R.N. were a proximate cause of injury to               , including her death.

My opinions are subject to modification pending review of further materials.

Very Truly Yours,

4

December 29, 2016

Ms. Susan Capra
Clifford Law Offices, P.C.
120 North LaSalle Street
Suite 3100
Chicago, Illinois 60602

       Re:    DiDiana v. Herold, et. al.
       File No. 16N-0017

Dear Ms. Capra:

       I am a physician duly licensed to practice medicine in all of its branches, specializing in and board certified in obstetrics and gynecology. I am knowledgeable in the relevant issues involved in this particular matter. I have practiced within the last six years in the same area of medicine that is at issue in this case and I am qualified by experience and demonstrated competence in the subject matter of this case.

       I have reviewed the medical records pertaining to Jessica DiDiana, from PCC Melrose Park Family Health Center and West Suburban Medical Center, including fetal monitor strips. I express the opinions stated herein to a reasonable degree of medical certainty based upon my training, education, and experience and my review of the aforesaid materials.

       On July 16, 2015, Jessica DiDiana presented to PCC Melrose Park Family Health Center for confirmation of pregnancy. Mrs. DiDiana was a 27 year old G3P2. She was seen by Maureen Ruder, M.D. Her pregnancy test was positive. She was prescribed prenatal vitamins. Various prenatal lab work was ordered as well as an ultrasound. Her EDC based on the last menstrual period was calculated as January 20, 2016. Mrs. DiDiana was instructed to return for a first prenatal visit in four weeks.

       On July 22, 2015, Mrs. DiDiana had an ultrasound performed which confirmed her pregnancy. Her baby was approximately 15 weeks and 2 days by ultrasound with an ultrasound EDC of January 11, 2016.

       Mrs. DiDiana had regular prenatal care. Her prenatal course was unremarkable. Mrs. DiDiana had ultrasounds on August 24, 2015, October 26, 2015 and November 20, 2015 which were reported as normal.

       On January 4, 2016, Mrs. DiDiana had a prenatal visit. She was at approximately 39 weeks gestation. Her blood pressure was initially recorded as 145/96. When her blood pressure was repeated with a manual cuff, it was 128/82. Labs were ordered. She was scheduled for an ultrasound the next day.

1

Mrs. DiDiana had an ultrasound on January 5, 2016 at West Suburban Medical Center. She was noted to have a low amniotic fluid index. Also, urine testing from the January 4, 2016 prenatal visit revealed an elevated protein/creatinine ratio. She was sent to the labor and delivery unit at approximately 1:15 p.m. Mrs. DiDiana's blood pressure was within normal limits. A vaginal exam by Kelly Ellis, CNM revealed that she was .5 cm dilated, 50% effaced with the baby at the -3 station. Mrs. DiDiana left West Suburban Medical Center at approximately 2:45 PM to arrange for child care. She returned to the labor and delivery unit at 7:00 p.m. The plan was for induction of labor for proteinuria and oligohydramnios.

At approximately 22:35 p.m., Mrs. DiDiana was evaluated by Midwife Ellis. Her cervical exam remained unchanged. Midwife Ellis placed Cervadil due to an unfavorable cervix for induction. Mrs. DiDiana was to have continuous fetal monitoring. Her contractions were mild and irregular. The fetal heart rate was 130 with moderate variability and accelerations. There were no decelerations.

On January 6, 2016 at approximately 3:45 a.m., Mrs. DiDiana was again evaluated by Midwife Ellis after being called to the room by the nursing staff for frequent uterine contractions. Mrs. DiDiana was sleepy after the administration of Stadol for pain but still had strong uterine contractions. Her cervical exam was 3 cm/60% /-1. Midwife Ellis removed the Cervadil due to tachysystole. The plan was to continue the induction of labor with the initiation of Pitocin after one hour, if the uterine contractions were greater than four to five minutes apart.

At 9:18 a.m., Mrs. DiDiana was evaluated by Kate Herold, CNM. She was uncomfortable with uterine contractions. Her cervical dilatation remained the same. Midwife Herold noted that the fetal monitor reflected a Category I tracing. Midwife Herold ordered an epidural with Pitocin to start thereafter.

Mrs. DiDiana's epidural was started at approximately 9:30 a.m. At 10:12 a.m., Pitocin was initiated. At 11:18 a.m., a Foley catheter was inserted. At 2:35 p.m., Midwife Herold returned to Mrs. DiDiana's bedside and found her to be resting comfortably. She documented the fetal heart rate tracing had a baseline of 140 beats per minute and moderate variability with accelerations and no decelerations. Contractions were every 2 ½ to 3 ½ minutes. The Pitocin was at 8 milliunits per minute.

At 6:30 p.m., Mrs. DiDiana had a spontaneous rupture of membranes. The amniotic fluid was clear. Midwife Herold performed a cervical exam which was 6 cm/ 70%/-2. Midwife Herold documented that Mrs. DiDiana was in active labor with a Category I fetal heart rate tracing. Midwife Herold placed an intrauterine pressure catheter.

Midwife Herold performed another cervical exam at 9:15 p.m. Mrs. Didiana's cervix had dilated to 8.5 cm. She was 90% effaced with the fetal head at the zero station. Midwife Herold documented that there was lots of show. Mrs. DiDiana was feeling pressure with contractions and was uncomfortable. The fetal heart rate tracing showed moderate variability with no accelerations

2

and early and some variable decelerations. Midwife Herold now deemed the fetal heart rate tracing to be a Category II strip. The plan was to continue the Pitocin induction, which was then at 10 milliunits.

On January 7, 2016 at 12:15 a.m., Midwife Herold performed a vaginal exam. Mrs. DiDiana's cervix was anterior lip. Mrs. DiDiana began pushing. At 12:30 a.m., Kimberly Scudder, R.N. noted late decelerations on the fetal monitor strips. Oxygen was applied at 12:44 a.m. Mrs. DiDiana continued to push. The fetal monitor and IUPC were not registering and were adjusted by Nurse Scudder.

At 1:00 a.m., both Nurse Scudder and Midwife Herold were noted at the bedside. Fetal heart rate decelerations continued as Mrs. DiDiana continued to push. At 1:21 a.m., Carl Johnson, M.D. was paged for either a vacuum or C-section delivery. Neonatology was also paged.

Dr. Johnson arrived at Mrs. DiDiana's bedside at 1:26 a.m. He delivered         at 1:28 a.m. with a Kiwi Vacuum extractor with one pull. He encountered a shoulder dystocia upon delivery of the head which was reduced in under two minutes. Dr. Johnson noted that         was not vigorous at birth and was handed off to neonatology. Dr. Johnson noted deep variable decelerations on the fetal monitor strips before delivery. He also noted there was no internal scalp electrode.

        was resuscitated in the delivery room by Marietta Luayon, M.D. At birth,         was blue and limp with no cry, respirations or heart rate. She was suctioned, bagged and intubated. Dr. Luayon recorded         's Apgar scores as 0, 2 and 2 at one, five and ten minutes respectively. Her cord blood gases were: Venous - pH 7.09 and Arterial - pH 6.73. She was administered multiple doses of epinephrine. Chest compressions were done.         was transferred to the nursery and placed on a ventilator. Dr. Luayon's diagnosis was severe hypoxic/ischemic encephalopathy. Arrangements were made to transfer         to Lurie Children's Hospital where she remained until her death on February 6, 2016.

Based upon my review of the aforementioned materials and my training, education, and experience, I have determined that there is a reasonable and meritorious cause for the filing of an action against Kate Herold, CNM. My opinions, based upon a reasonable degree of medical certainty, are that certain acts and omissions of Kate Herold, CNM breached the standard of care.

On January 6, 2016 and January 7, 2016, Kate Herold, CNM, and Defendants, West Suburban Medical Center and PCC Community Wellness Center, by their actual and/or apparent agent and employee, Kate Herold, CNM, deviated from the standard of care by:

a.    Failing to collaborate with an obstetrician about the plan of care on a patient with oligohydramnios;

b.    Failing to accurately interpret the fetal monitor strips;

3

c.   Failing to initiate intrauterine resuscitation measures for a non-reassuring fetal heart rate pattern, including turning off Pitocin;

d.   Failing to zero the IUPC to accurately monitor uterine resting tone between contractions on a patient receiving Pitocin;

e.   Failing to apply a fetal scalp electrode after the rupture of membranes with a non-assuring fetal monitor strip;

f.   Failing to consult with the obstetrician at approximately 11:45 p.m. on January 6, 2016, based on the non-reassuring fetal heart rate pattern;  and

g.   Failing to timely request that a C-section or operative vaginal delivery be performed by the obstetrician at approximately 11:45 p.m.

The aforesaid professionally negligent acts and/or omissions of Kate Herold, CNM  were a proximate cause of injury to                    , including her death.

My opinions are subject to modification pending review of further materials.

Very Truly Yours,

4